## Downey *v*. Rymorowicz, Appellant.

206

Argued May 5, 1959. Before JONES, C. J., BELL, JONES, COHEN and MCBRIDE, JJ.

 reargument refused September 18, 1959.

*H. G. Stutzman,* with him *James P. Bohorad,* and *Stutzman, Lewis and Sidoriak,* and *Houck, Bohorad and Lipkin,* for appellant.

*Fred C. Pace,* with him *Noonan & Pace,* for appellees.

OPINION BY MR. JUSTICE McBRIDE, July 2, 1959:

Joseph Downey and John Zemlavage suffered injuries in a collision of two motor vehicles, one operated by Zemlavage and owned by Downey; the other owned and operated by John Rymorowicz. By stipulation of counsel the action instituted by the plaintiffs was severed and Zemlavage was made an additional defendant by appropriate proceedings. At the trial the following verdict was rendered:

1. In favor of the plaintiff Downey and against the original defendant Rymorowicz in the sum of $7,000 and in favor of the plaintiff Zemlavage and against the original defendant Rymorowicz in the sum of $100.

2. In favor of the plaintiff Downey and against the original defendant Rymorowicz in the sum of $7,000.[1]

Judgments were entered on the verdicts and defendant appealed.

We need consider only the contention that Rymorowicz is entitled to judgment n.o.v. In doing so we shall view the testimony in the light most advantageous to plaintiffs, giving to them the benefit of every inference that might reasonably be deduced from the evidence and resolving all conflicts in their favor. *Koehler v. Schwartz*, 382 Pa. 352, 115 A. 2d 155; *Beatty v. Hoff*, 382 Pa. 173, 114 A. 2d 173.

When so considered the facts of the case are these:

The accident happened in broad daylight, about 4:15 p.m. on May 10, 1952, about 3 miles east of the borough of Mahanoy City. The highway is a 2 lane macadam road, 18 feet in width with a 2 to 3 feet berm on each side and running in a generally east-west direction.

Before the accident the three principals had been together in a cafe 2 or 3 miles east of the place of

---

[1] In view of the disposition we make of this case it is unnecessary to determine if this verdict was for $7,000 or $14,000.

collision. They agreed to meet in another cafe in Mahanoy City. Downey and Zemlavage left the cafe, got into Downey's car with Zemlavage driving, and proceeded westwardly on Route 45 toward Mahanoy City. Rymorowicz followed in his own car. According to the testimony of both Downey[2] and Zemlavage[3] they were travelling at about 40 miles per hour. As their car reached a point 30 feet east of the railroad crossing Rymorowicz proceeded to pass them on their left, crossed the railroad and then instead of returning to the right or westbound lane continued westwardly on the eastbound lane with one or both of his left wheels off the improved portion of the highway and on the

---

[2] Downey testified as follows: "Q. And you were about thirty feet east of the railroad track when Rymorowicz passed you, is that correct? A. That is right. Q. And he passed you, of course, on his left. A. That is right. Q. He went on the left side of the highway. A. That is right. Q. And as he crossed the railroad track, did he stay on the left side of the highway? A. That is right. Q. Did he then cut back on to the right side? A. No, sir. Q. And you say then that he stayed on the left side, and his left front wheel got off the pavement. A. That is right. Q. And he continued that way up the highway until he struck a pole? A. That is right."

[3] Zemlavage testified as follows: "Q. Mr. Zemalavage, Mr. Rymorowicz passed you thirty (30) feet east of the railroad track? A. Yes, sir. Q. And he stayed on the left side of the highway? A. Yes, sir. Q. And he was on the left side of the highway across the railroad track? A. Yes, sir. Q. And you were on the right side? A. Yes, sir. Q. And you continued on the right side? A. Yes, sir. Q. And thirty (30) feet east of the railroad track when he passed you, you saw the other car coming down the hill? A. There is no hill there. It is a straight-away. Q. I mean coming toward you from Mahanoy City. A. That is correct, sir. . . . Q. How far away from the railroad track was Mr. Rymorowicz when you say his left front wheel got off the railway? A. Well, he got off right after he crossed the railroad. Q. How far? A. Maybe fifteen (15), twenty (20) feet, across the railroad. Q. Fifteen (15), twenty (20) feet across the railroad? A. Yes, sir."

berm of the road, "bucking" for a distance of 125 feet where it struck a utility pole and came to a stop.

Plaintiffs testified that as Rymorowicz passed them they saw a motor vehicle approaching from the west in the eastbound lane at about 65 miles an hour. Downey says that this oncoming vehicle was 250 feet away when he first saw it (see R. 132a) and Zemlavage says he could see it from a point 700 feet away (see R. 340a, 341a). When Zemlavage observed the Rymorowicz vehicle "bouncing and bucking along" the edge of the left lane he continued in his own right or westbound lane while the oncoming eastbound vehicle continued speeding toward them. When Rymorowicz's car struck the utility pole it extended in a southwest direction with its front end off the improved portion of the highway and its rear protruding and partially blocking the eastbound lane of travel. According to the plaintiffs they continued their westward path following Rymorowicz by 2 or 3 car lengths at the same rate of speed, i.e., 35 to 40 miles per hour.[4] They observed the erratic behavior of the Rymorowicz car and its subsequent collision with the utility pole and the third vehicle approaching at a speed of 65 to 70 miles per hour, without stopping, pulling off on the berm, or even without decreasing speed. Plaintiffs' vehicle continued to occupy its right or westbound lane following Rymorowicz's when Zemlavage observed the eastbound car swerve from his right-hand lane to the westbound lane then occupied by plaintiffs' vehicle. In spite of the obvious danger Zemlavage pulled over to his left side and endeavored to steer the vehicle between the Rymoro-

---

[4] Downey testified as follows: "Q. . . . and you were going thirty-five (35) to forty (40) miles an hour when he passed you? A. That is right. Q. And I suppose when he did pass you and crossed the railroad tracks, that you continued at the same speed, did you, thirty-five (35) to forty (40) miles an hour? A. Yes."

wicz car and the speeding eastbound vehicle. The left front of plaintiffs' car struck the right rear of the Rymorowicz car, then continued westwardly, out of control, and struck another utility pole farther up the highway. According to these facts the contributory negligence of Zemlavage, the driver, is obvious. No other inference is reasonable.

As we said in *Malitovsky v. Harshaw Chemical Co.*, 360 Pa. 279, 283, 61 A. 2d 846: "Ordinarily, the question of contributory negligence is for the jury. It is only in those cases where contributory negligence is so clearly revealed that fair and reasonable individuals would not disagree as to its existence that it may be declared judicially."

This is just such a clear case. When Zemlavage saw Rymorowicz pass him to his left and he observed the vehicle obviously out of control travelling westwardly on the eastbound lane of the highway, with a speeding car approaching from the west, impending disaster was plainly foreseeable to any reasonable man.

This Court said in *Nark v. Horton Motor Lines, Inc.*, 331 Pa. 550, 553, 1 A. 2d 655: "No man has a right to continue his car or truck in motion if such motion makes an injury to another car or to any person inevitable or reasonably probable, provided, of course, such car or truck is 'under control,' . . ."

The duty of the driver of a motor vehicle to have his car under control at all times means having it under such control that it can be stopped before doing injury to any person in any situation that is reasonably likely to arise under the circumstances. *Galliano v. East Penn Electric Co.*, 303 Pa. 498, 154 Atl. 805.

A prudent operator in this situation would have stopped immediately or driven off on the berm to a place of evident safety. Had Zemlavage made an attempt to do either of these things then the question of his negligence would properly have been submitted to

the jury. However, he elected to pursue a course manifestly dangerous and his injuries and those of plaintiff Downey were the direct result of that careless conduct.[5]

The court below evidently based its refusal to grant defendant's motion for judgment n.o.v. on the theory that plaintiff Zemlavage was faced with an emergency or sudden peril. However, the court failed to take into consideration that if the emergency itself could have been avoided by the exercise of reasonable care then that doctrine cannot be invoked. *Nark v. Horton Motor Lines, Inc.*, 331 Pa. 550, 1 A. 2d 655; *Stern v. Passaro*, 326 Pa. 187, 190 Atl. 881. The emergency which the lower court is speaking of, i.e., when Zemlavage tried to go between Rymorowicz's vehicle and

---

[5] "Q. So you say Mr. Rymorowicz passed you when you were thirty (30) feet east of the railroad track, and he continued across the railroad track on the west side of the highway? A. That is right. Q. And you saw another car coming from Mahanoy City? A. Yes, sir. Q. On the same lane on which Mr. Rymorowicz was traveling? A. Yes, sir. Q. And you didn't pull off the highway on the right-hand side? A. Well, on that road there there is a tendency to stay on the right, and you could just come on the left, and then you come on your right side of the road and there is a slight turn there. Q. Mr. Zemalavage you did not pull off the highway on that ten feet of berm, did you? A. Well, that thirty (30) feet, he was off his right. Q. I am not asking where he was. I am asking what you didn't do. A. I didn't see any reason to do it. . . . Q. And when he got off the macadam with his left front wheel, you continued to drive your car on the right lane? A. Yes, sir. Q. In the face of this other car coming toward you from the west? . . . A. Yes, I was watching his car. It looked like it was starting to get out of control. I was watching him more to see what he was going to do, whether he was going to cross over or stay there. Q. But you did see this car coming from the west when he first got off the highway? A. Thirty (30) feet east of the railroad, I saw him. Q. Well, then, you saw the car when Mr. Rymorowicz got off the highway, too, didn't you? A. Yes, sir. Q. And where were you then when Mr. Rymorowicz first got off the highway? You weren't across the railroad tracks yet, were you? A. Just about starting to get across. Q. Starting to get across the tracks? A. Yes, sir. . . ."

212

the oncoming vehicle from the west, was an emergency of his own creation. Had Zemlavage stopped or driven the motor vehicle off the highway, there would have been no such emergency.

Plaintiff Downey is in no better position than Zemlavage for he is the owner-passenger and is admittedly on a joint enterprise with the operator. The negligence of the operator is therefore imputable to him so as to bar any recovery on his part from the third party. *Beam v. Pittsburgh Railway Co.*, 366 Pa. 360, 77 A. 2d 634; *Johnson v. Hetrick*, 300 Pa. 225, 150 Atl. 477.

Judgments reversed and here entered for defendant.