# Penn-Hilbert v. Lehigh County Prison

*Donald P. Russo*, for plaintiff
*Thomas M. Caffrey*, for defendant

REICHLEY, *J.*, September 3, 2013—The defendant has filed a motion for summary judgment seeking demurrer on all counts of plaintiff's complaint. This is an employment discrimination case. For the reasons set forth herein, defendant's motion for summary judgment is granted.

## Findings of Fact

Plaintiff was hired by defendant as a corrections officer on or about March 15, 1989. On January 2, 2005, plaintiff was involved in an automobile accident unrelated to her

employment. She suffered injuries to her shoulders and neck which caused her to be unable to return to work. According to the complete and authoritative timeline provided in the affidavit of Jane Fischer, Lehigh County Human Resources Director, from January 3, 2005 through March 3, 2005, plaintiff was out of work on paid sick leave. From March 3, 2005 through March 25, 2005, plaintiff was out of work on no-pay status. On January 26, 2005, plaintiff submitted a family Medical leave request form, which was received by defendant's human resources department on or about April 7, 2005. Under the Family Medical Leave Act (FMLA), plaintiff was entitled to twelve weeks of family medical leave for each twelve month period of active employment. Entitlement is calculated by measuring backward over a twelve month period. The FMLA request was granted and backdated to March 28, 2005. From March 25, 2005 through June 17, 2005, plaintiff was out of work on family medical leave.

According to the Lehigh County personnel policy then in effect, employees were permitted to request an annual unpaid leave of absence for up to six months. Plaintiff submitted two leave of absence requests, one on March 22, 2005, and a second on September 1, 2005. Both requests were granted. Plaintiff was out of work on a consecutive ten-month leave of absence from March 3, 2005 through January 25, 2006. For a portion of this period, plaintiff's FMLA leave ran concurrently with the ten-month unpaid leave.

On January 26, 2006, plaintiff returned to work as a correctional officer. She worked for defendant throughout

most of 2006, but continued to receive treatment for her injuries from a doctor and a chiropractor.

On December 5, 2006, plaintiff was assigned to work a shift from 11:00 p.m. through 7:00 a.m. in Housing Unit 4C. At approximately 1:30 a.m. on December 6, 2006, plaintiff was ordered to report to the Admission & Discharge Department to assist other correctional officers in completing the booking of a new female inmate who was being uncooperative. Plaintiff failed to report as ordered. As a result, her supervisor, Sergeant Charles Bowman, ordered her to prepare an incident report detailing why she failed to report to assist the officers. Her incident report read as follows:

> CO Nowicki arrived on unit asking me to go to A&D for an out of control female booking. My reply was due to a back injury I would not be able to go and my doctor telling me not to strain my back. My attorney asked if my job was accommodating my injury so no more injury occurred. My reply their (sic) is no light duty on my shift, and I am on nightshift. I was always told a CO is a CO. Their (sic) were plenty of male CO's to handle the situation along with some females. I was also told the situation was under control. I have had to be in many situations where I had to deal with a male strip all in the line of duty.

(Brief in support of defendant's motion for summary judgment, at 3.)

The uncooperative inmate was on drugs and throwing people around the room. Plaintiff advised Sergeant

Bowman she was uncomfortable in dealing with that individual because someone — either herself or another officer — could have been injured as a result of her back and neck injuries preventing her from performing the physical acts needed to control and subdue the inmate.

Plaintiff's supervisors told her she was not to return to work until she was able to perform all of the duties required of a correctional officer. These duties include the ability to move quickly up and down stairs, respond to emergencies, and to physically restrain combative inmates. Plaintiff's injuries prevented her from performing these tasks. Plaintiff subsequently provided her supervisors with a note from Dr. Mitchell H. Baskin indicating she would receive therapy on her back and shoulder such that she would be "up to full potential." Plaintiff never returned to work as a correctional officer at Lehigh County Prison after the December 6, 2006 incident.

At this point, plaintiff was placed on a second family medical leave. She was out on FMLA leave from December 5, 2006 through February 26, 2007. On April 18, 2007, plaintiff submitted a leave of absence request acknowledging that her FMLA leave had expired on February 26, 2007 and requesting an additional six months of unpaid leave. That request was granted and made effective retroactive to February 27, 2007, with a scheduled expiration of August 26, 2007.

On August 15, 2007, defendant sent a letter to plaintiff advising her that her leave of absence was set to expire. It further indicated that if she planned on returning to work,

she needed to provide medical certification releasing her to full duty with no restrictions, including the ability to work, go up and down stairs, run in emergency situations, and to subdue or control combative inmates. If she was unable to return to work fully able to perform the duties required of her position, defendant advised her that it would treat her failure to return to work as a voluntary termination of employment.

In response to the letter sent to plaintiff, attorney Clyde Bartel, on plaintiff's behalf, wrote a letter to Director Edward Sweeney dated August 22, 2007 requesting that plaintiff be afforded additional time to meet the requirements from the August 15, 2007 letter. Specifically, attorney Bartel requested that plaintiff have until September 30, 2007 to provide defendant with the required documentation. Director Sweeney sent a responsive letter granting plaintiff an extra month of leave until September 27, 2007 to be evaluated by a physician to verify her capacity to return to work.

On September 25, 2007, plaintiff tendered a letter to Director Sweeney from Dorna Armbrister, MD, (exhibit C-11) indicating plaintiff had an MRI pending for persistent back and cervical pain. Her prognosis was "guarded." Based on the indication from Dr. Armbrister that plaintiff continued to suffer from pain and was unable to perform essential functions of a correctional officer, defendant terminated plaintiff's employment effective September 26, 2007.

Procedural History

On September 24, 2010, plaintiff filed a praecipe for writ of summons in the within matter. A complaint was filed on June 15, 2012, and an amended complaint was subsequently filed on August 10, 2012. The amended complaint included claims under the Pennsylvania Human Relations Act (PHRA), the Age Discrimination in Employment Act (ADEA), the Americans with Disabilities Act (ADA), Title VII, and the FMLA.

Defendant filed preliminary objections to each claim. On January 24, 2013, the Honorable William E. Ford struck the PHRA and ADEA claims. Judge Ford denied the demurrer to the ADA and Title VII claims, and granted leave for plaintiff to file a more specific FMLA claim.

The second amended complaint was filed on February 27, 2013. It asserted claims under the ADA, Title VII, and the FMLA. Defendant filed the instant motion for summary judgment on May 31, 2013 seeking judgment as a matter of law on each of the three substantive counts of the second amended complaint.

## Standard of Review

Before the court is a motion for summary judgment. The standard for summary judgment is well-established.

A court may grant a motion for summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Bronson v. Horn*, 830 A.2d 1092 (Pa.Cmwlth.2003), *aff'd*, 577 Pa. 653, 848 A.2d 917 (2004), *cert. denied*, 543 U.S. 944, 125 S.Ct. 369, 160 L.Ed.2d 257 (2004).

The right to judgment must be clear and free from doubt. *Id.* In reviewing the granting of a motion for summary judgment, this Court must "view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Pappas v. Asbel*, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001).

*Lambert v. Katz*, 8 A.3d 409, 413 n.3 (Pa. Cmwth. 2010).

Discussion and Conclusions of Law

Americans with Disabilities Act

Plaintiff's first cause of action stems from an alleged violation of the ADA. Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a). Employers violate the ADA when they fail to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.* §12112(b)(5)(A). A "qualified individual" is an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* §12111(8). Job functions are deemed "essential" when, *inter alia*, "the

reason the position exists is to perform that function." 29 C.F.R. §1630.2(n)(2). Evidence supporting a job function being qualified as essential includes an employer's judgment as to what job functions are essential, the amount of time spent on the job performing that particular function, and the consequence of not requiring the job holder to perform the function. *Imler v. Hollidaysburg American Legion Ambulance Service*, 731 A.2d 169, 173 (Pa. Super. 1999) (citing 42 U.S.C. §12111(8)).

> In order to make out a prima facie case under the ADA, [a plaintiff is] required to show (1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position...; and (4) that the [employer] refused to make such accommodations. An employer can defeat a prima facie claim if it shows (1) that making a reasonable accommodation would cause it hardship, and (2) that the hardship would be undue.

*Mitchell v. Washingtonville Central School District*, 190 F.3d 1, 6 (2d Cir. 1999) (citations omitted).

The ADA defines reasonable accommodations as including "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for

individuals with disabilities." 42 U.S.C. §12111(9)(B). The burden is on a plaintiff to demonstrate that there was a reasonable accommodation, including "identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits. Summary judgment may be granted for a defendant only in cases in which the plaintiff's proposal is either clearly ineffective or outlandishly costly." *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 284 (3d Cir. 2001) (citations, internal quotation marks, and emphasis omitted). To determine an appropriate reasonable accommodation, "it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] in need of accommodation." 29 C.F.R. §1630.2(o)(3).

For purposes of the instant summary judgment motion, defendant does not appear to contest that plaintiff made out a case for the first two prongs: (1) that she was an individual with a disability, and (2) that defendant was aware of that disability. Defendant asserts plaintiff has not demonstrated that even with reasonable accommodation she could have performed the essential job functions of a corrections officer, and that defendant failed to make such accommodations.

According to an affidavit from Edward Sweeney,

In order to perform the essential job functions of a correctional officer at the Lehigh County Prison, the employee must be able to move quickly, up and down stairs, to respond to emergencies and/or pursue and physically restrain combative inmates. At any point

in time in the course of each shift, every officer must be prepared to respond to facility emergencies. Even a control booth officer, when being relieved for breaks, assumes the duties of the relieving officer and must respond to declared emergencies. All officers on duty, regardless of post assignments, including control booth posts, are required to respond to spontaneously declared high level emergencies. This requirement is due to the responsibility of the Lehigh County Department of Corrections to maintain order and protect the public in the case of a riot situation as well as to protect inmates and staff from physical attacks.

(Defendant's Exhibit C, at 1.)

On December 5, 2006, plaintiff was ordered, along with other correctional officers, to report to the admissions and discharge department in order to assist in controlling a combative female inmate. Plaintiff failed to follow that order and acknowledged in her incident report that it was due to a back injury. She asserted her injury prevented her from assisting the other officers out of concern that they might be injured due to her physical inability to restrain the inmate. From the date of that incident onward until the date of her termination, plaintiff was never cleared by a doctor to perform all of the duties of a corrections officer. In fact, the communication from plaintiff's doctor forwarded to defendant prior to her termination indicated that as of September 27, 2007, she was still suffering from persistent back and cervical pain with a guarded prognosis pending the results of an MRI. Plaintiff asserts she should not have been terminated before the results of

that MRI were known. However, the termination occurred after plaintiff had already received a letter from defendant indicating she would be terminated if she could not perform the required functions of her position. Plaintiff was even granted an additional month's leave in order for her to obtain medical clearance to return to work.

Similar to defendant not contesting plaintiff's disability, plaintiff does not contest that at the time she was terminated, she was unable to perform the essential job functions of a corrections officer. However, she asserts that given reasonable accommodations, she would have been able to continue in her job. Between her deposition and plaintiff's brief opposing the instant summary judgment motion, the court notes two accommodations recommended by plaintiff. One is an additional period of unpaid leave and the second is a "light duty" assignment. Regarding the unpaid leave of absence recommendation, under the facts as presented in this matter, defendant gave plaintiff an unpaid leave of absence and in fact extended it an extra month. In that time, plaintiff had the opportunity to obtain necessary medical clearance to return to work if such clearance would have been provided. Under county personnel policy, she had used up her six months annual unpaid leave of absence from February 25, 2007 through August 25, 2007. She had also exhausted her 12-week FMLA leave from December 5, 2006 through February 25, 2007.

From the court's perspective, the difficulty with plaintiff's assertion that she requested reasonable accommodation is that plaintiff fails to identify exactly

what reasonable accommodation she was requesting. It appears plaintiff designated the request for indefinite extended unpaid leave as a reasonable accommodation. Failing that, plaintiff appears to allege the reasonable accommodation was informal interaction between plaintiff and her employer.

The initiation of the informal interaction requirement was satisfied by the exchange of correspondence in August of 2007 between the defendant and plaintiff's then-counsel. In terms of granting her indefinite leave, plaintiff fails to acknowledge she had already exhausted her paid leave, her FMLA leave, and her unpaid leave status under the county's personnel policy, and had been granted an additional one month of unpaid leave to allow her to complete rehabilitation and medical treatment in order to return to work. In light of all this, the court is compelled to ask what more in terms of accommodation was she entitled?

Likewise, the court finds plaintiff's light duty argument unpersuasive. As the Seventh Circuit Court of Appeals observed in a similar case,

> The prison has to be able to call upon its full staff of correctional officers for help in putting down a prison riot, and therefore each officer must have experience in the positions, such as searching and escorting inmates, that provide the necessary training and experience for responding effectively to a riot, as well as the capability for such response. Obviously a prison riot is an extreme threat. But there are many other duties that

include disciplining prisoners, inspections, intervening in disputes, and dealing with routine but sometimes tense situations that cannot be subtracted from the performance expectations of a correctional officer.

*Dargis v. Sheahan*, 526 F.3d 981, 986-87 (7th Cir. 2008) (citation omitted).

In this instance, the court agrees with defendant that there is no light duty option for a corrections officer at Lehigh County Prison. Under the collective bargaining agreement negotiated by her representative union during plaintiff's employment, plaintiff was ineligible for light duty positions because her claimed injury or disability was not work-related and she still could not perform essential job functions. All corrections officers must be able to respond to situations that arise in dealing with combative inmates, riot situations, disciplinary matters, and intervention in disputes. These critical job functions are essential for the maintenance of security at the prison, along with the preservation of safety of the employees and the inmates. To that end, plaintiff has failed to demonstrate that the lack of a light duty option constitutes a failure on defendant's part to offer a reasonable accommodation.[1]

In sum, plaintiff has failed to present evidence sufficient for a jury to determine defendant violated the ADA by terminating her. She has failed to identify a reasonable accommodation which was rejected by defendant. Accordingly, summary judgment is granted in favor of

---

1. The court also notes that light duty was abolished for Lehigh County Prison pursuant to a 2001 collective bargaining agreement.

defendant and against plaintiff on the ADA claim.

Title VII

Plaintiff's Title VII claim is based on an allegation that she was treated differently by her superiors because she is an African American. Interestingly, plaintiff does not allege she was terminated on the basis of race.

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a).

Defendant brings up as a threshold matter an assertion that plaintiff is barred from seeking relief under Title VII at this time for failure to comply with the procedural requirements.

A plaintiff bringing an employment discrimination claim under Title VII must comply with the procedural requirements set forth in 42 U.S.C. §2000e-5. Before filing a lawsuit, a plaintiff must exhaust her administrative remedies by filing a timely discrimination charge with the EEOC. The EEOC will then investigate the charge, and the plaintiff must wait until the EEOC issues a right-to-sue letter before she can initiate a private action. The ensuing suit is limited to claims that are within the scope of the initial administrative charge. The purpose of requiring exhaustion is to afford

the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court.

*Barzanty v. Verizon PA., Inc.*, 361 Fed. Appx. 411, 413-14 (3d Cir. 2010) (internal quotation marks and citations omitted).

Accordingly, the initial requirement for a Title VII claim is that a plaintiff must timely file a charge of discrimination with the EEOC. The time period in this case is 300 days after the alleged unlawful employment practice. *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 472 (3d Cir. 2001) (citing 42 U.S.C. §2000e-5(e)(1)).

On July 21, 2008, plaintiff filed a charge of discrimination with the EEOC. Accordingly, any alleged discriminatory acts must have taken place within the 300 days prior to July 21, 2008. That time period starts on September 25, 2007. Once a charge of discrimination is filed, plaintiff must await a right-to-sue letter from the EEOC authorizing the private suit. Reviewing the documentation, it appears plaintiff complied with these basic requirements. However, defendant asserts plaintiff is time-barred from raising any Title VII claims because of the 300 day requirement.

Plaintiff cites five separate incidents of alleged discriminatory practices ranging from 1989 through the early 2000s. These incidents include: (1) plaintiff being told she was being hired because she is a black female (1989); (2) plaintiff being disciplined for failing to attend required training sessions (1994); (3) plaintiff not being

permitted to use a cane on duty to assist in walking (roughly 1999-2000); (4) plaintiff suspended for one day for having a Bible in her possession and allegedly reading it while on duty (the one-day suspension occurred in 2004); and (5) plaintiff allegedly being falsely accused of not conducting a proper inmate count (roughly September of 2006).

All of the foregoing are isolated incidents which took place outside the 300-day timeframe in which plaintiff would have needed to file a Title VII action. Plaintiff also references a newspaper article and a noose and black hood in the prison which she claims to be race-related. These items, however, are historical items relevant to the last time a person was executed by hanging at the prison over 100 years ago. Plaintiff is the only one who appears to affiliate these items with race.

For these reasons, the court finds that plaintiff cannot make out a violation of Title VII and her claim must be dismissed.[2]

Family Medical Leave Act

Plaintiff's final claim is unfair termination based on her employment being terminated while she was waiting for

---

2. Upon a review of the incidents described by plaintiff, the court finds that procedural bars notwithstanding, plaintiff's claim lacks merit because these incidents do not establish a prima facie case of discrimination against plaintiff on the basis of race. *See Iadimarco v. Runyon*, 190 F.3d 151, 157-58 (3d Cir. 1999) (citations omitted) (plaintiff alleging Title VII violation must first establish a prima facie case of racial discrimination). The incidents cited are not evidence of any continuous or cumulative pattern of racial discrimination. *See, e.g., Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (isolated incidents of racially discriminatory comments insufficient to establish violation of Title VII). Title VII has not been violated in this matter in defendant's dealings with plaintiff.

the results of her MRI. This gives rise to an "interference claim" under the FMLA. *See Sommer v. The Vanguard Group*, 461 F.3d 397, 399 (3d Cir. 2006).

The FMLA provides that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the intent to exercise any right provided" in the FMLA. 29 U.S.C. §2615(a)(1). For a plaintiff to state an interference claim, she must show she was "entitled to benefits under the FMLA and that [she] was denied them." *Sommer*, 461 F.3d at 399. To be entitled to benefits under the FMLA, a person must be an eligible employee. An eligible employee is one who was employed "for at least 12 months by the employer with respect to whom leave is requested" and worked "at least 1,250 hours of service with [her] employer during the previous 12-month period." 29 U.S.C. §2611(2)(A)(i). Eligible employees are provided up to 12 weeks of unpaid leave during any 12-month period as a result of "a serious health condition that makes the employee unable to perform the functions" of her position. 29 U.S.C. §2612(a)(1)(C).

In this case, plaintiff was not an eligible employee. According to the evidence presented in conjunction with the instant summary judgment motion, plaintiff worked only 484.75 hours between September 26, 2006 and September 26, 2007, the 12-month period leading up to the date of her termination. (Affidavit of Jane Fisher, defendant's exhibit B, at 3.) Therefore, she is ineligible for relief under the FMLA because she does not meet the definition of an eligible employee. However, even assuming plaintiff was eligible, she was granted twelve weeks of FMLA leave

from December 5, 2006 through February 26, 2007. The FMLA provides that eligible employees are entitled to up to 12 weeks of unpaid leave during any 12-month period. 29 U.S.C. §2612(a)(1)(D). Thus, in the 12-month period in question, plaintiff already received her requisite 12-week unpaid leave. Accordingly, plaintiff has failed to demonstrate entitlement to any rights under the FMLA and has therefore failed to assert a cognizable claim for relief under the same.[3]

## Conclusion

Plaintiff has failed to demonstrate defendant violated her rights under the ADA. She has also failed to set forth a prima facie case of discrimination or disparate treatment under Title VII of the Civil Rights Act and all of the incidents cited in support thereof are time-barred regardless. Finally, she has failed to demonstrate eligibility for relief under the FMLA. For the foregoing reasons, summary judgment is properly granted in favor of defendant Lehigh County Prison and against plaintiff, Deborah Penn-Hilbert.

---

3. Even if plaintiff was eligible under the FMLA, her claim still fails. Plaintiff asserts defendant should have waited for the MRI results before terminating her employment. However, defendant was under no obligation to do so. "In order for an employee to demonstrate entitlement to restoration, the employee must have been able to perform essential functions of the job without accommodation at the time [she] sought restoration." *McFarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271-72 (3d Cir. 2012) (citation and internal quotation marks omitted). As was discussed in the ADA context, plaintiff was incapable of performing the essential job functions of a corrections officer upon the expiration of her leave. In fact, plaintiff has never asserted an ability to perform the essential job functions of that position. Defendant therefore did not violate her rights in terminating her.