**Pamela STEIN, Personal Representative of the Estate of Paul Stein, Deceased, Appellant**

v.

**PENNSYLVANIA TURNPIKE COMMISSION.**

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 2009.

Decided Feb. 16, 2010.

---

Joseph M. Melillo, Harrisburg, for appellants.

Ira L. Podheiser, Pittsburgh, for appellee.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and QUIGLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Pamela Stein, on behalf of the Estate of Paul Stein, appeals an order of the Court of Common Pleas of Allegheny County (trial court) entering judgment in favor of the Pennsylvania Turnpike Commission (Commission), defendant in Stein's wrongful death action. The trial court determined that the Commission could not be held liable for fatal injuries sustained by Paul Stein (Decedent) when his car hydroplaned, spun off the roadway and struck a guardrail. In this case, we consider whether sovereign immunity has been waived for a claim where it is alleged that a negligently designed guardrail has caused bodily injury. We affirm the trial court's holding that an exception from sovereign immunity has not been established for such a claim.

The facts surrounding the location of Decedent's accident are as follows. Decedent was injured while driving eastbound on the Pennsylvania Turnpike near Exit 56, the Monroeville interchange, where there is a bend in the road. The eastbound highway surface consists of asphalt; has two travel lanes; and a paved berm the width of a travel lane. Where Decedent's accident occurred, there is a gap in the guardrail on the outside edge of the road, leaving the highway open to an adjacent hill that slopes upward from the road. At the east end of the gap, the guardrail resumes. It does not resume at the side of the road; rather, it resumes in the adjacent hillside and then turns down the hill to meet the road. From the viewpoint of the driver traveling east on the turnpike, the guardrail is turned back at a near right angle from the road. The end of the guardrail located in the hillside is protected by a U–shaped piece of metal known as a "boxing glove." Complaint ¶ 14; Reproduced Record at 7a (R.R. ___).

The accident took place the afternoon of September 15, 2003, during a heavy rain. Decedent's car hydroplaned and spun off the roadway through the gap in the guardrail onto the grassy hill. The vehicle continued spinning as it turned down the hill, hitting the "boxing glove" end of the guardrail with such force that the sides of the boxing glove folded back, creating a sharp, chisel-like shape. The folded back metal impaled Decedent's vehicle on the passenger side and drove into the vehicle. In doing so, the guardrail amputated Decedent's right leg below the knee; Decedent's loss of blood caused his death.

Pamela Stein filed a wrongful death and survival action against the Commission. She alleged negligence, particularly with respect to the design of the guardrail, which she identified as the proximate and immediate cause of Decedent's death. Stein also alleged that the road surface at the point of the accident is "polished asphalt" and that the "polished roadway, very heavy rain, and slow drainage of the turnpike over the flat road surface were factors that resulted in a hydroplaning situation triggering the event of this accident." Complaint ¶¶ 8, 15; R.R. 6a, 7a. She further alleged as follows:

29. All of Plaintiff's damages as hereinafter related are the direct and proximate result of the negligence of Defendant, Pennsylvania Turnpike Commission, in that it:

(a) Fitted the end of the [guardrail] fronting oncoming traffic with a non-crashworthy terminal as defined by § 2:12.7A of the PennDOT Design Manual, Part 2, Chapter 12.

(b) Failed to affix a [guardrail] end treatment with an impact attenuating treatment at the upstream end.

(c) In the alternative, failed to bury the upstream end of the [guardrail] into the back slope.

(d) Failed to design the terminal end of the [guardrail] such that there [was] no exposed rail element upon which a vehicle could become impaled.

(e) Failed to adhere to appropriate existing standards in affixing a non-crashworthy [guardrail] end treatment to the upstream end of the [guardrail] in question.

(f) Maintained the Pennsylvania Turnpike's macadam surface in a highly polished state near the point of the accident, thereby increasing the risk that in adverse weather, Mr. Stein's vehicle would hydroplane and leave the travel portion of the roadway.

Complaint ¶ 29; R.R. 8a–9a.

The Commission filed an answer and new matter denying that it had been negligent in any way and asserting the defense of sovereign immunity. The parties then undertook discovery, including the exchange of expert reports and expert depositions. That discovery produced the record on which the trial court based its judgment.

Stein's expert, Howard Earnest, a consultant with National Forensic Consultants, Inc., issued a report on April 1, 2005. Earnest opined that the proximate cause of the accident was the Commission's use of a boxing glove treatment on the end of the guardrail located in the hill. He explained that a boxing glove treatment should be used at the conclusion of a guardrail section, not its start, because it cannot withstand a vehicle impact. In a supplemental report dated July 30, 2008, Earnest opined that the accident was caused by a combination of the vehicle's speed, hydroplaning and road conditions. Earnest noted that, according to the police report, Decedent was driving too fast for

conditions, which either caused or contributed to the vehicle's hydroplaning. Other contributing factors consisted of the worn tread on the vehicle's tires; three tires that were slightly underinflated; a left rear tire that was significantly underinflated; and water on the roadway. Based on his visual inspection, Earnest described the highway as having a polished road surface. Earnest acknowledged that skid resistance tests performed by the Commission after Decedent's accident showed that the road met the Commission's wear limit standards.

Colin Farr, a consultant employed by National Forensic Consultants, Inc., also investigated the accident at Stein's request and authored reports on April 5, 2005, and August 11, 2008. Farr opined that the guardrail did not comport with Pennsylvania Department of Transportation (Penn-DOT) standards, which apply to the Commission. He concluded that instead of a boxing glove end treatment, the guardrail end should have been buried in the ground or been constructed with a crashworthy end treatment. Farr opined that the combination of rain and a polished road surface reduced the available surface friction at the accident scene. In Farr's view, the Commission was "aware or should have been aware of the danger of a polished travel surface and should have remedied the situation." R.R. 190a.

Stein's forensic pathologist, Isidore Mihalakis, M.D., opined that Decedent's cause of death was exsanguination that resulted from the leg amputation. Decedent had no other injuries.

Michael Shaak, a registered professional engineer employed by the Commission, was deposed. Shaak acknowledged that a boxing glove end treatment to a guardrail is not crashworthy. However, the guardrail in question was turned away from the road, making it a low probability that a vehicle would impact the end of the guardrail. Shaak explained that in 1997, the policy was changed. The Commission no longer turns guardrails away from the road but buries their ends in the ground or fits them with a crashworthy end. The new installation approach is intended to reduce the likelihood of a vehicle being flipped into the air upon impact with the guardrail. It should also prevent an impaling event, such as that suffered by Decedent. Shaak testified that he did not know of any other instance where a guardrail end had impaled a vehicle; Decedent's accident appears to be unique in Pennsylvania Turnpike history.

Shaak testified that the Commission uses the best road construction materials possible and routinely tests different segments of roadway for skid resistance. The roadway around the accident scene was repaved in 1998, and skid resistance tests performed in 1999 (before the accident) and 2005 (after the accident) both showed that the road's skid resistance was within the Commission's acceptable limits.[1]

The Commission moved for summary judgment, asserting that there was no exception from sovereign immunity for a negligently designed or installed guardrail and that Stein failed to show that the Commission negligently maintained the road surface. The trial court, relying on this Court's decision in *Fagan v. Depart-*

---

1. John Longo, a supervisor who is responsible for maintenance of the highway near the accident scene, testified that there have never been problems with water pooling in the area. He did not know of any other accidents occurring at that particular site. In addition, Guy Jeffrey, the Commission's operations manager for the area encompassing the accident site, testified that Commission employees visually inspect the road for problems on a daily basis. No road deficiencies were seen at the time of the accident.

ment of Transportation, 946 A.2d 1123 (Pa.Cmwlth.2008) (en banc) granted the motion for summary judgment. The present appeal followed.[2]

On appeal, Stein raises four issues for our review. First, Stein argues that the trial court erred because the guardrail was a dangerous condition of Commonwealth real estate for which there is an exception to sovereign immunity. Second, Stein argues her expert evidence established a causal connection between the dangerous condition, i.e., the guardrail, and Decedent's death. Third, Stein asserts that there is a material factual dispute about whether the Commission was negligent in maintaining its road surface. Fourth, Stein argues that this Court's holdings that a plaintiff must offer evidence of why a vehicle left the highway to state a cause of action are inconsistent with other applicable authority and should be revisited.[3]

▮ We turn, first, to the heart of this appeal, which is whether sovereign immu-

nity barred Stein's wrongful death action. Stein argues that the boxing glove end treatment of the guardrail, which directly caused Decedent's death, is precisely the type of dangerous real estate condition for which sovereign immunity has been waived.

▮ Commonwealth agencies are generally immune from tort liability. However, under the statute commonly known as the Sovereign Immunity Act, 42 Pa.C.S. §§ 8501–8528, the General Assembly has waived immunity for certain claims. Relevant here is the waiver found in Section 8522

> for damages caused by ... [a] dangerous condition of Commonwealth agency real estate and sidewalks ... and highways under the jurisdiction of a Commonwealth agency.

42 Pa.C.S. § 8522(b)(4).[4] It is the plaintiff's burden to establish the dangerous condition of the real estate or highway. Fagan, 946 A.2d at 1126. Further, the

---

**2.** This Court's standard of review of a grant of summary judgment is whether the trial court committed an error of law, and our scope of review is plenary. Cochrane v. Kopko, 975 A.2d 1203, 1205 (Pa.Cmwlth.2009). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Farabaugh v. Pennsylvania Turnpike Commission, 590 Pa. 46, 52, 911 A.2d 1264, 1267 (2006). This Court must view the evidence in the light most favorable to the nonmoving party, but all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Cochrane, 975 A.2d at 1205.

**3.** Stein's focus on why Decedent's car left the highway is in response to this Court's decision in Martinowski v. Department of Transportation, 916 A.2d 717 (Pa.Cmwlth.2006). There, the plaintiff lost control of her vehicle and struck a guardrail, which came apart on impact. One of the separated pieces severed her leg. We upheld summary judgment in favor of PennDOT because the plaintiff did

not know why she left the road and, thus, could not establish causation, an essential element of a negligence claim. The case did not turn on whether PennDOT was negligent in the design and installation of the guardrail.

**4.** Specifically, Section 8522(b)(4) provides:

> (b) **Acts which may impose liability.**—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:
>
> \* \* \*
>
> (4) **Commonwealth real estate, highways, and sidewalks.**—A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency.

42 Pa.C.S. § 8522(b)(4).

exception to immunity is to be strictly construed against the plaintiff because the General Assembly has demonstrated a "clear intent to insulate government from exposure to tort liability." *Id.*

Pennsylvania courts have considered the issue of sovereign immunity for guardrails on several occasions, beginning with the landmark case *Dean v. Department of Transportation,* 561 Pa. 503, 751 A.2d 1130 (2000). The accident in *Dean* occurred when a vehicle fishtailed on a snow-covered roadway, left the road, traveled down a steep embankment and overturned, seriously injuring the passenger. The passenger brought suit alleging that PennDOT had been negligent by failing to install a guardrail at the point the vehicle left the road. Our Supreme Court held that the Commonwealth cannot be held liable for failure to erect a guardrail under the real estate, highways and sidewalk exception to sovereign immunity found at Section 8522(b)(4) of the Sovereign Immunity Act. *Dean,* 561 Pa. at 511–512, 751 A.2d at 1134. It reasoned that the absence of a guardrail is not a dangerous condition of Commonwealth realty because it "does not render the highway unsafe for the purposes for which it was intended, *i.e.,* travel on the roadway." *Id.* at 511, 751 A.2d at 1134. The Supreme Court observed that

> the General Assembly can correct any misinterpretation of the immunity provisions by amending the statute so as to explicitly waive immunity for dangerous conditions of guardrails. . . . Absent such legislative directive, however, we conclude that the real estate exception does not apply to the failure to install a guardrail.

*Id.* at 512, 751 A.2d at 1134–1135. To date, however, the General Assembly has not responded to the invitation to "correct" the Supreme Court's construction of the real estate exception to sovereign immunity as it relates to guardrails.

In *Svege v. Interstate Safety Service, Inc.,* 862 A.2d 752 (Pa.Cmwlth.2004), this Court considered the claim that a concrete barrier, which was alleged to be too short to serve its protective function, fell into the Section 8522(b)(4) exception to sovereign immunity. The accident occurred when a tractor trailer crashed over and through a concrete barrier, known as a "Jersey" barrier, located in the median of the Pennsylvania Turnpike. The truck landed on top of a minivan traveling in the opposite direction, killing several members of the family in the minivan. The plaintiffs contended that a Jersey barrier taller than the 32–inch barrier located at the point of the accident could have prevented the devastating losses suffered by the plaintiffs. We held, relying upon *Dean,* that the claim did not meet the real estate exception to sovereign immunity because the Jersey barrier had not made the highway unsafe for its intended purpose, "*i.e.,* travel on the roadway." *Dean,* 561 Pa. at 511, 751 A.2d at 1134.

■ In *Simko v. County of Allegheny,* 869 A.2d 571 (Pa.Cmwlth.2005), this Court considered whether pedestrians may bring a tort claim against a local government for damages arising from the absence of a guardrail. In *Simko,* a vehicle veered off the road and struck pedestrians walking on a path alongside the road. The pedestrians died from their injuries. This Court dismissed the damages actions filed by the pedestrians' estates on the basis of governmental immunity.[5] We reasoned that the

---

**5.** Although *Simko* dealt with the streets exception to governmental immunity under the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8542(b)(6), it is equally applicable to Commonwealth liability under the Sovereign Immunity Act, because as observed by the *Dean* court, those two acts "deal with indistinguish-

county did not have a duty to erect a guardrail to protect pedestrians from vehicles. We rejected the argument of the plaintiffs that there is such a duty under the real estate exception, as opposed to the streets exception, to erect a guardrail. We also rejected plaintiffs' argument that because there had previously been a guardrail where the accident occurred, the county had a duty to keep and maintain a guardrail in that location.

Recently, this Court has had occasion to consider whether a claim may be brought against PennDOT on the theory that it had negligently designed and maintained a guardrail. In *Fagan*, the occupants of a car were fatally injured after the car left the highway, slid on the gravel shoulder, and hit the guardrail at its turned-down end. The car became airborne, striking a pole and trees. Plaintiffs, the parents of the deceased passenger, sued PennDOT on the theory that the turned-down guardrail was a dangerous design and PennDOT had been negligent to install it. This Court affirmed the trial court's grant of summary judgment in favor of PennDOT. In doing so, we relied upon *Dean* and *Simko* for the proposition that the Commonwealth cannot be held liable for failing to erect a guardrail and upon *Svege* for the proposition that the Commonwealth cannot be liable for failing to install a different type of guardrail. Accordingly, we held that the Commonwealth is immune "from suit regarding the design and maintenance of the guardrail." *Fagan*, 946 A.2d at 1127.

Stein attempts to distinguish *Fagan* on the facts. She argues that in *Fagan* and in the cases cited therein, the guardrails were not the direct cause of harm; they simply failed to prevent the vehicles from traveling into a path of danger. Further, the plaintiffs in *Fagan* asserted that the

guardrails were a dangerous condition of the *highway*. The situation, here, is different according to Stein.

Unlike the plaintiffs in *Fagan*, Stein does not claim that the guardrail failed to prevent the fatal injury but, rather, directly caused the injury. Further, Stein claims that it was a dangerous condition of Commonwealth *real estate*, as opposed to a highway, that caused Decedent's fatal injury. Because of these distinctions, Stein asserts that *Fagan's* holding is not dispositive.

In support of this line of reasoning, Stein directs our attention to *Von der Heide v. Department of Transportation*, 553 Pa. 120, 718 A.2d 286 (1998). In *Von der Heide*, a vehicle crossed the lane of oncoming traffic, struck a guardrail and then a bridge abutment, killing the driver. The estate claimed that the roadway and guardrail were defective. PennDOT countered that the driver fell asleep at the wheel, which was the superseding cause of the accident. The Supreme Court held that the trial court did not err in omitting a jury instruction on superseding cause. Stein posits that the only inference to be drawn from *Von der Heide* is that the Commonwealth can be held liable for a defective guardrail, where the guardrail itself causes the harm. Otherwise, the Von der Heide estate could not have prevailed.

Stein also directs us to *Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307 (1989). In *Snyder*, our Supreme Court held that the Commonwealth could not be held liable for failing to erect a guardrail to keep people from falling into a strip mine adjacent to a highway. Although the Commonwealth is responsible for a dangerous condition of its real estate, the Supreme Court explained

able subject matter." *Dean*, 561 Pa. at 509 n. 6, 751 A.2d at 1133 n. 6.

that the dangerous condition at issue in *Snyder* was the strip mine owned by a private party. Stein reads *Snyder* to mean that the Commonwealth can be held liable where the dangerous condition on land adjacent to the highway is owned by the Commonwealth.

The Commission responds that Stein's attempts to circumvent the holding in *Fagan* lack merit. We agree.

First, Stein's reliance on *Von der Heide* is misplaced. As we explained in *Fagan*, since *Von der Heide*, our appellate courts have consistently narrowed the Section 8522(b)(4) exception to sovereign immunity. In addition, the issue of whether the guardrail was negligently designed was neither addressed nor resolved in *Von der Heide*. The only issue was whether, in a comparative negligence case, the superseding cause can be raised by defendants against the plaintiff. The Supreme Court clarified that the superseding cause cannot be used against a plaintiff; it can be raised only where it is the acts of a third party that are claimed to be the superseding cause of the accident.

Second, *Snyder* did not establish that in some instances a guardrail should be considered under the real estate exception as opposed to the highway exception. In *Dean* and in every other case involving a guardrail, whether alleged to be negligently absent or negligently designed, it is the highway exception that governs the sovereign immunity analysis. Indeed, Stein's cause of action is based upon the argument that the guardrail's design presented a danger to one traveling on the highway, *i.e.*, Decedent. Accordingly, the focus is whether the guardrail in question ren-

dered the highway unsafe for its intended purpose of travel.

Stein's argument that the *Fagan* holding can be avoided by invoking the real estate exception, as opposed to the highway exception, is creative. However, it does not work for several reasons.

First, the Section 8522(b)(4) inquiry requires that the dangerous condition be determined in the context of the intended purpose of the Commonwealth's "real estate and sidewalks . . . and highways." 42 Pa.C.S. § 8522(b)(4). It is difficult to conceive of how a negligently designed guardrail would apply to any realty, other than a highway. Certainly, the hillside next to the roadway, where Decedent's fatal injury took place, was not intended to be a place where vehicles would drive. Stein has not directed us to a single case, from any jurisdiction, where a state or a local government has been held liable for a negligently designed guardrail on the theory that it makes the land adjacent to the highway unsafe, as opposed to the highway itself. Indeed, we rejected the argument in *Simko*, 869 A.2d 571, that the lack of a guardrail created a dangerous condition on the land adjacent to the highway.[6]

Second, our courts have held that where a state or local government installs a safety fixture that it has no duty to provide, there can be no liability for negligent installation of that fixture. In *Gardner v. Consolidated Rail Corporation*, 524 Pa. 445, 573 A.2d 1016 (1990), our Supreme Court rejected the plaintiff's contention that because the City of Philadelphia erected a protective fence near railroad tracks, the City thereby acquired the continuing duty to maintain that fence.[7] The

---

**6.** Such a split, we noted, would create the absurd result that pedestrians who are injured when a vehicle leaves the highway could hold a government liable for the ab-

sence of a guardrail, but drivers could not. *Simko*, 869 A.2d at 574.

**7.** Stein draws our attention to language in *Gardner* observing that had "the children

Supreme Court explained that an action by a government to improve safety cannot "create a duty where one does not [otherwise] exist." *Id.* at 453–454, 573 A.2d at 1020 (quoting *Scarborough v. Lewis*, 523 Pa. 30, 38, 565 A.2d 122, 125 (1989)). Relying on this *Gardner* principle, this Court held in both *Simko* and *Fagan* that because there is no duty to erect a guardrail in the first place, there is no duty to design it in a particular way.

Third, Stein does not correctly characterize the issue in *Fagan.* Contrary to Stein's contention, the plaintiffs in *Fagan* did attempt to impose liability on the Commonwealth under the real estate exception, as opposed to the highway exception. They argued that the lack of a crashworthy end treatment on the guardrail made the guardrail itself a dangerous condition of the real estate, contending that the guardrail could not safely be used for its intended purpose, *i.e.,* being impacted by vehicles. The Court rejected this argument. We also rejected the distinction the plaintiffs attempted to draw between a negligent absence of a guardrail and the negligent design of a guardrail. We explained that

> Courts faced with a causation question in leaving-the-pavement cases may resolve the issue with different language but recent results are consistent: the loss tends to fall on the party with some responsibility for the vehicle leaving the

pavement and not the owner of the land or objects nearby.

*Fagan,* 946 A.2d at 1129.

This case cannot be distinguished from *Fagan,* where we held the Commonwealth immune from suit where the guardrail end treatment catapulted a car into the air, causing fatal injuries. As in *Fagan,* we hold the Commonwealth to be immune from suit where the guardrail end treatment folds back and impales a vehicle, causing fatal injuries. It is for the General Assembly, not this Court, to expand the exception in Section 8522(b)(4) of the Sovereign Immunity Act, 42 Pa.C.S. § 8522(b)(4), to include a waiver for the negligent design and installation of guardrails next to a Commonwealth highway.

For these reasons, we affirm the order of the trial court that Stein's claim is barred by the doctrine of sovereign immunity.[8]

## ORDER

AND NOW, this 16th day of February, 2010, the order of the Court of Common Pleas of Allegheny County in the above-captioned case, dated September 19, 2008, is hereby AFFIRMED.

---

been injured by the fence ... our view might well be different ...". *Gardner,* 524 Pa. at 455, 573 A.2d at 1021. First, this discussion is *dicta.* Second, the result here might be different had a person parked his vehicle and left it to go for a walk, in the course of which he cut his heel on the guardrail. However, the plaintiff would be required to show that the land was intended to be used by pedestrians who would encounter the guardrail. In short, to distinguish a real estate exception from the highway exception tortures logic.

8. Given our disposition of the case, we need not address Stein's arguments that she provided sufficient evidence of causation as to why Decedent's vehicle left the roadway and the guardrail's role in causing Decedent's death to create issues of material fact requiring jury determination, or in the alternative, that she should not be required to show why the vehicle left the roadway. Because Decedent's only injury was caused by the guardrail and the Commission cannot be held liable for damage caused by the guardrail, it is irrelevant why Decedent left the roadway.