**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | |
|---|---|
| JOISSE A. CAGEY AND DALE J. CAGEY, HER HUSBAND, | : No. 36 WAP 2016 |
| | : |
| | : Appeal from the Order of the |
| Appellants | : Commonwealth Court entered July 28, |
| | : 2016 at No. 2650 CD 2015, affirming |
| | : the Order of the Court of Common |
| v. | : Pleas of Beaver County entered |
| | : December 4, 2015 at No. 10716 of |
| | : 2015. |
| COMMONWEALTH OF PENNSYLVANIA, | : |
| DEPARTMENT OF TRANSPORTATION, | : ARGUED:  October 17, 2017 |
| A COMMONWEALTH AGENCY, | : |
| | : |
| Appellee | : |


<u>**OPINION**</u>


**JUSTICE DONOHUE**                    **DECIDED:  FEBRUARY 21, 2018**

We granted allocatur to determine whether the Pennsylvania Department of Transportation ("PennDOT") is liable for injuries caused by negligently and dangerously designed guardrails erected on Commonwealth real estate.  The case presents an opportunity to clarify the contours of the real estate exception to sovereign immunity, *see* 42 Pa.C.S. § 8522(b)(4), especially in light of the Commonwealth Court's expansive treatment of our prior decision in *Dean v. Dep't of Transp.*, 751 A.2d 1130 (Pa. 2000).  In *Dean*, we held that PennDOT has no duty to erect guardrails alongside Commonwealth roadways. *Id.* at 1134.  Here, however, the question is whether the Commonwealth owes a duty of care when PennDOT has in fact installed a guardrail

alleged to be dangerous. Pursuant to the plain language of the Sovereign Immunity Act, 42 Pa.C.S. §§ 8521-8528 (the "Act"), we find that the General Assembly has waived PennDOT's immunity as a bar to damages caused by dangerous guardrails affixed to Commonwealth real estate. *Dean* is inapposite and does not control under the facts presented here. We reverse the decision of the Commonwealth Court and remand for further proceedings consistent with this Opinion.

The Act was enacted in response to this Court's decision in *Mayle v. Pennsylvania Dep't of Highways*, 388 A.2d 709 (Pa. 1978), wherein we abolished the common law doctrine of sovereign immunity. Pursuant to the Act, the Commonwealth generally enjoys immunity from suit for damages in negligence except under certain circumstances set forth therein. *See* 42 Pa.C.S. §§ 8521-8522. Specifically, as discussed in more detail infra, section 8522(a) of the Act waives immunity in the instances set forth in section 8522(b) "for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity." *Id.*, § 8522(a). Pertinent to the case at bar, the defense of sovereign immunity may not be raised when the real estate exception, 42 Pa.C.S. § 8522(b)(4), applies.

On June 22, 2015, Joisse and Dale Cagey (the "Cageys") filed a negligence action against PennDOT. In their complaint, the Cageys alleged that on January 26, 2015, they were travelling southbound on State Route 551 in Beaver County, Pennsylvania when they encountered snow and ice on the roadway. Cageys' Complaint at 2. As a result of these conditions, Joisse Cagey ("Mrs. Cagey"), the driver

of the car, lost control of the vehicle, which spun off the roadway and slammed into a guardrail adjacent to the road. *Id.* at 3. The guardrail penetrated the side of the vehicle, resulting in substantial injuries to Mrs. Cagey, including toe, foot and leg fractures. *Id.*

The Cageys sought damages for Mrs. Cagey's injuries and for Mr. Cagey's loss of consortium. *Id.* at 6-7. Specifically, they alleged that their damages were the result of the following: (1) PennDOT's negligent installation of a guardrail within an area that should have been traversable by vehicle; (2) PennDOT's negligent installation of a dangerous "boxing glove" guardrail that was not "crashworthy"; and (3) PennDOT's negligent failure to inspect or correct the "boxing glove" guardrail. *Id.* at 5. On July 9, 2015, PennDOT filed an answer and new matter in which it raised the defense of sovereign immunity.

On September 8, 2015, PennDOT filed a motion for judgment on the pleadings, in which it argued that the Act barred the Cageys' claims. PennDOT argued that the Cageys' causes of action did not fall within any of the enumerated exceptions to its sovereign immunity. On October 13, 2015, the Cageys filed a reply in which they conceded that the trial court was bound by existing Commonwealth Court decisions interpreting *Dean*. Thus, on December 4, 2015, the trial court granted PennDOT's motion for judgment on the pleadings.

The Cageys timely appealed to the Commonwealth Court where they argued that its prior decisions have improperly expanded this Court's holding in *Dean*. In *Dean*, we specifically held that the "failure to erect a guardrail on the highway is not encompassed by the real estate exception to sovereign immunity." *Dean*, 751 A.2d at 1134 (observing that "the lack of a guardrail does not render the highway unsafe for the purposes for

which it was intended, i.e., travel on the roadway"). While our decision in *Dean* was limited to the question of whether PennDOT has an obligation to install guardrails, subsequent Commonwealth Court decisions expanded our ruling to provide sovereign immunity protection in circumstances where the Commonwealth installed guardrails but did so in an allegedly negligent manner. For example, in *Fagan v. Commonwealth, Dep't of Transp.*, 946 A.2d 1123 (Pa. Commw. 2006), the plaintiff argued that the Commonwealth was not immune from suit where the complaining party alleged that guardrails were negligently designed or maintained. *See id.* at 1125-26. Declining to limit *Dean* to its facts (i.e. the absence of a guardrail), the Commonwealth Court in *Fagan* determined that "where a guardrail existed, the failure to design it differently or the failure to maintain it were not dangerous conditions of roadways for which immunity was waived either for the Commonwealth or for local government." *Id.* at 1127-28.

In the case sub judice, the Commonwealth Court acknowledged that it had consistently applied the holding in *Fagan* to other similar cases. *Cagey v. Commonwealth, Dep't of Transp.*, 2650 C.D. 2015, at 4 (Pa. Commw. July 28, 2016) (unreported opinion) (citing, *e.g.*, *Lambert v. Katz*, 8 A.3d 409, 417 (Pa. Commw. 2010); *Stein v. Pa. Tpk. Comm'n*, 989 A.2d 80, 88 (Pa. Commw. 2010)). On the basis of this precedent, the Commonwealth Court affirmed the trial court's order granting PennDOT's motion, explaining that its decisions following *Dean* "represent a logical and reasonable application of principles set forth by our Supreme Court, which have gone uncontradicted by our legislature." *See Cagey*, 2650 C.D. 2015 at 6.

In reaching its conclusion, the Commonwealth Court rejected the Cageys' argument that its interpretation of the real estate exception to sovereign immunity is

contrary to the common law duty of a possessor of land. Ostensibly ignoring the statutory requirement set forth at section 8522(a) of the Act, the Commonwealth Court held that "where a Commonwealth agency enjoys immunity from tort liability, it is irrelevant that a private person would be liable for a similar act." *Id.* (citing *Page v. City of Phila.*, 25 A.3d 471, 476 (Pa. Commw. 2011)).

On appeal, the Cageys argue that *Dean* is inapplicable to the facts of this case because *Dean* establishes only that the Commonwealth's failure to install a guardrail does not give rise to a waiver of sovereign immunity under section 8522(b)(4). Cageys' Brief at 5 (citing *Dean*, 751 A.2d at 1133). They posit that the Commonwealth Court has "erroneously extrapolated" from *Dean* that a "dangerous defective guardrail" is legally and logically equivalent to the absence of a guardrail. *Id.* at 7-11. The Cageys also argue that section 8522(b)(4) creates a single real estate exception – not separate "highway" and "real estate" exceptions – imposing liability for injuries caused by any and all dangerous conditions of Commonwealth realty. *Id.* at 13. In this regard, they disapprove of the Commonwealth Court's focus, which follows *Dean*, on whether a guardrail renders "the highway unsafe for its intended purpose of travel." *Id.* at 12 (quoting and criticizing *Stein v. Pa. Tpk. Comm'n*, 989 A.2d 80). Finally, highlighting our rules governing statutory construction, the Cageys assert that the plain language of the Act waives sovereign immunity for any "dangerous condition" of Commonwealth real estate for which there would be a common law duty of care owed. *Id.* at 13-17 (citing 42 Pa.C.S. § 8522(a)). Because, at common law, a possessor of land would be liable for the installation of a dangerous guardrail adjacent to a highway, *see, e.g.,* Restatement (Second) of Torts §§ 307, 368; *Scarborough v. Lewis,* 565 A.2d 122, 126

(Pa. 1988), the Cageys contend that the General Assembly clearly intended PennDOT to be liable in the case at bar.  Cageys' Brief at 16-17.

PennDOT argues that our decision in *Dean* compels the result reached by the Commonwealth Court.  The agency posits that *Dean* "did not turn on the absence of an 'artificial condition,' but [instead on] … the fact that the failure to install a [guardrail] had nothing to do with the safety of travel on the roadway."  PennDOT's Brief at 13.  Because the guardrail in this case "had no effect on the Cageys' ability to travel safely on the roadway," PennDOT urges it cannot be liable for injuries caused by the guardrail regardless of whether it was negligently designed and installed on Commonwealth real estate.  *See id.*  PennDOT insists that there is a distinction between its "general duty to keep property safe for its intended use," which extends to all Commonwealth real estate, and the "specific duty to keep property safe **for vehicular travel**," which extends only to "the traveled portion of the highway" and therefore does not apply here.  *Id.* at 14 (emphasis original).  While conceding that the holding in *Dean* "is precisely that PennDOT does **not** have a duty to install guardrails," PennDOT argues that the "underpinning" of that holding is that PennDOT does not have a duty to ensure the safety of vehicles careening off the roadway.  *Id.* at 15 (emphasis original).

The instant action requires us to engage in statutory interpretation.  Pursuant to the Statutory Construction Act, "the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a).  It is well settled that the best indication of the General Assembly's intent may be found in a statute's plain language.  *See id.*, § 1921(b).  Thus, "when the language of a statute is plain and unambiguous and conveys a clear and definite

meaning," we must give the statute this plain and obvious meaning. *Mohamed v.*

*Commonwealth Dep't of Transp.*, 40 A.3d 1186, 1194 (Pa. 2012).

The Act provides, in relevant part:

> **(a) Liability imposed**.--The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.
>
> **(b) Acts which may impose liability**.--The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:
>
> \* \* \*
>
> > **(4) Commonwealth real estate, highways and sidewalks.--**A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

42 Pa.C.S. § 8522(a), (b)(4).[1]  Accordingly, in order for liability to be imposed on

PennDOT, three statutory requirements must be met.  First, the injury must have

---

[1] Paragraph five of section 8522(b) provides:

**(5) Potholes and other dangerous conditions.--**A dangerous condition of highways under the jurisdiction of a Commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements, except that the claimant to recover (continued…)

resulted from a "dangerous condition." *Id.*, § 8522(b)(4). Second, the dangerous condition must be a condition "of Commonwealth agency real estate." *Id.* Third, the damages must be recoverable under common law "if the injury were caused by a person not having available the defense of sovereign immunity." *Id.*, § 8522(a).

Our standard of review over a decision sustaining a judgment on the pleadings requires us to determine whether, on the facts averred, the law makes recovery impossible. *Emerich v. Phila. Ctr. for Human Dev., Inc.*, 720 A.2d 1032, 1034 (Pa. 1998).[2] Accordingly, we must review the Cageys' complaint to determine whether they have sufficiently alleged the three above-listed statutory requirements for waiver of sovereign immunity under sections 8522(a) and 8522(b)(4) of the Act. We begin with the first requirement that their injuries resulted from a "dangerous condition." 42 Pa.C.S. § 8522(b)(4). The term "dangerous condition" is unambiguous and plainly

---

(…continued)
must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the Commonwealth agency had actual written notice of the dangerous condition of the highway a sufficient time prior to the event to have taken measures to protect against the dangerous condition. Property damages shall not be recoverable under this paragraph.

42 Pa.S.C. § 8522(b)(5).

[2] We have explained that the same principles apply to a judgment on the pleadings as apply to a preliminary objection in the nature of a demurrer:

> All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purpose of this review. The question presented by the demurrer is whether on the facts averred the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Emerich*, 720 A.2d at 1034 (internal citations omitted).

encompasses any condition that presents a danger.  *See id.*  The Cageys averred that the guardrail causing their injuries was a "dangerous condition" in that it was defective, negligently-installed and uncrashworthy.  Cageys' Complaint at 5.  Specifically, they alleged that a dangerous "blunt end" or "boxing glove" terminal end treatment of the guardrail speared and penetrated the driver's side door, resulting in "significantly more severe injuries" to Mrs. Cagey than if she had not been speared by the "boxing glove" end treatment.  *Id.* at 4-5.  Thus, on the facts averred, it cannot be said that the law would, with certainty, prevent recovery.

Next, with respect to the second statutory requirement, the Cageys averred that the allegedly defectively designed guardrail installed adjacent to a highway under PennDOT's jurisdiction is a condition "of Commonwealth agency real estate." 42 Pa.C.S. § 8522(b)(4).  We find this statutory requirement to be unambiguous as well. As an initial matter, we note that the real estate exception to sovereign immunity is broad in that it applies to dangerous conditions **of all Commonwealth real estate**, not just dangerous conditions of highways.  *See id.*  While highways are specifically mentioned in section 8522(b)(4), it is clear from the word "including" that the General Assembly intended to indicate that highways are merely one form of Commonwealth real estate for the purposes of this exception.  Given the breadth of this exception, it is largely irrelevant whether the guardrails are, technically, on the highway itself or are instead affixed to Commonwealth real estate adjacent thereto.  The operative question is whether the guardrail at issue was a dangerous condition of Commonwealth real estate, not whether it was a dangerous condition on a highway.

It is a well settled tenet of property law that whatever is annexed to the land becomes land. *See Clayton v. Lienhard*, 167 A. 321, 322 (Pa. 1933) (citing the ancient maxim – quicquid plantatur solo, solo cedit – and concluding that "all fixtures whilst attached to the freehold are, for the time being, a part of the realty"). Here, PennDOT undertook to permanently install guardrails alongside the highway. Accordingly, the guardrails, which are physically attached to the land, became fixtures thereof and thus part of the land itself. *Compare In re Sheetz, Inc.*, 657 A.2d 1011, 1013-14 (Pa. Commw. 1995) (holding that canopies over gas pumps were "fixtures" of gas station property and therefore "real estate" (albeit for purposes other than the Sovereign Immunity Act) because they were affixed by bolts to the land, thereby evidencing an "intent of permanence" by the owner), *with Blocker v. City of Phila.*, 763 A.2d 373, 374-76 (Pa. 2000) (finding that a bleacher was not a "fixture" of real property for purposes of Philadelphia's immunity under the Tort Claims Act[3] because "it rested on, but was not attached to, the ground"); *see also Dean*, 751 A.2d at 1135 (Nigro, J., dissenting) (expressing the view that a guardrail is "an obvious part of the highway").

Because the guardrail at issue was affixed to Commonwealth real estate, making it legally indistinguishable from the land upon which it was erected, the Cageys

---

[3] The Tort Claims Act provides: "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541. One exception to local agency immunity is for "the care, custody or control of real property in the possession of the local agency." *Id.*, § 8542(b)(3). Recognizing that the Tort Claims Act and the Sovereign Immunity Act deal with the same subject matter, this Court has sought to interpret the two statutes consistently, while also acknowledging that "the plain language chosen by the legislature cannot be ignored in doing so." *Jones v. Se. Pa. Transp. Auth.*, 772 A.2d 435, 440-42 (Pa. 2001) (internal citations omitted).

sufficiently alleged that the dangerous condition (the negligently installed "boxing glove"-style guardrail) was a condition "of Commonwealth agency real estate." 42 Pa.C.S. § 8522(b)(4); *see also Snyder v. Harmon*, 562 A.2d 307, 311-13 (Pa. 1989) (explaining that the "unambiguous language" of section 8522(b)(4) indicates that the dangerous condition must be an "artificial condition or a defect of the land itself" and "must derive, originate from or have as its source the Commonwealth realty")[4]; *Jones v. Se. Pa. Transp. Auth.*, 772 A.2d 435, 443-44 (Pa. 2001) (holding that salt scattered upon a SEPTA train platform was not a dangerous condition "of Commonwealth agency real estate" because the "substance or object" on Commonwealth real estate was not alleged to be "the result of a defect in the property or in its construction, maintenance, repair or design").

Regarding the third and final requirement that the alleged damages be recoverable at common law, *see* 42 Pa.C.S. § 8522(a), it is well settled that possessors of land (here, as discussed, to include the guardrail) owe a duty to protect invitees[5] from

---

[4] We noted in *Snyder* that "the critical word in the statutory language is the word 'of'," and we set forth the following dictionary definition for this preposition: "used to indicate derivation, origin or source." *See Snyder*, 562 A.2d at 311, n. 5.

[5] In *Atkins v. Urban Redevelopment Auth. of Pittsburgh*, 414 A.2d 100, 103 n.2 (Pa. 1980), this Court endorsed the definition of "invitee" as set forth in the Restatement (Second) of Torts § 332. An "invitee" is, inter alia, "a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." *See Reinoso v. Heritage Warminster SPE LLC*, 108 A.3d 80, 83 n.4 (Pa. Super. 2015) (quoting Restatement (Second) of Torts § 332). This provision of the Restatement explains that "where land is held open to the public, there is an invitation to the public to enter for the purpose for which it is held open. Any member of the public who enters for that purpose is an invitee… ." Restatement (Second) of Torts § 332, Comment d. By way of example:

(continued…)

foreseeable harm. *See Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983). In *Carrender*, we discussed section 343 of the Restatement (Second) of Torts with approval and explained that pursuant to that provision, a possessor of land is liable for harm caused by a condition on the land if he:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Id.* (quoting Restatement (Second) of Torts § 343 (1965)).

---

(…continued)

> Where a strip of private land abutting upon the public sidewalk is so paved that it is indistinguishable from the sidewalk, the possessor holds it open to the public as provided for public use for the purpose of passage, and anyone so using it is an invitee. The possessor's duty to use reasonable care to keep such land in proper and safe condition is not far removed from his obligation to the public upon the highway itself, or to those who stray a few feet from it in the course of travel.

*Id.* In their brief, the Cageys mischaracterize themselves as "licensees" without substantial explanation. *See* Cageys' Brief at 15. As discussed infra, however, their pleadings are sufficient to satisfy the requirements for liability as to "invitees." *See* Cageys' Complaint at 5.

Similarly, the Cageys rely on section 368 of the Restatement (Second) of Torts, *see* Cageys' Brief at 16, which sets forth the duty of care owed by a possessor of land with respect to dangerous conditions adjacent to highways. Specifically, section 368 provides that a possessor of land is subject to liability when "he realizes or should realize" that the condition he created near a highway involves an unreasonable risk to persons traveling on or foreseeably deviating from the highway. *See* Restatement (Second) of Torts § 368. This standard is consistent with that reserved for an invitee rather than a licensee.

Thus, at common law, a possessor of land is liable for harm caused by a dangerous condition that he would have discovered through the exercise of reasonable care. *Id.* The Cageys alleged in their complaint that PennDOT negligently failed to "inspect, detect and correct the uncrashworthy blunt end and/or 'boxing glove' terminal end treatment on the [guardrail]." Cageys' Complaint at 5. This allegation satisfies the foregoing common law requirement. *See Carrender,* 469 A.2d at 123. Moreover, the defective guardrail is not the kind of obvious condition a possessor of land should expect an invitee to discover independently. *See id.* To the contrary, an invitee on Commonwealth real estate would expect a guardrail alongside the road to prevent or minimize harm, not to "spear" her and cause "significantly more severe injuries." Cageys' Complaint at 5. The averments of fact set forth in the Cageys' complaint meet the requirement of section 8522(a).

Accordingly, there is no question that the Cageys sufficiently alleged, pursuant to the plain and unambiguous language of sections 8522(a) and 8522(b)(4), that a "dangerous condition of Commonwealth agency real estate" caused their injuries, and that damages would have been recoverable at common law absent the protections of sovereign immunity. *See* 42 Pa.C.S. § 8522(a), (b)(4). Sovereign immunity is therefore waived and PennDOT may be held liable for any damages caused by the negligent installation or design of the guardrails at issue in this matter.

In so ruling, we reject PennDOT's contention that our prior decision in *Dean* has any applicability under the facts presented here. In *Dean*, we held only that a "dangerous condition of Commonwealth agency real estate" must be an artificial condition or defect of the land itself, as opposed to the absence of such a condition.

Moreover, based on the plain language of the Act, we reject PennDOT's insistence that *Dean* requires the alleged condition to make travel "on the roadway" dangerous. We have not been asked to overrule *Dean*[6] but we clarify today that our holding in *Dean* is limited to the facts presented there, namely, a circumstance in which PennDOT failed to

---

[6] We reject the suggestion in Justice Wecht's concurring opinion that we overrule *Dean*, for several reasons. First, the Cageys have not asked us to overrule *Dean*, and the parties have not presented the Court with any sustained argument or advocacy on which to do so. While it is true that the Cageys referenced the possibility of doing so in their reply brief, Cagey's Reply Brief at 3, they did so **only** if the "safe for travel on the roadway" language in *Dean* was determined to be "one of the decisional rationales supporting the decision." *Id.* Herein, however, we have rejected *Dean*'s "safe for travel on the roadway" rationale entirely (without overruling *Dean*), thus plainly demonstrating that it was not a "decisional rationale" of significance to the holding in *Dean*.

In this regard, we note that the lack of advocacy with respect to overruling Dean is hardly surprising, as we were not asked to and we did not grant allocatur to consider this issue. Instead, we granted allocatur to decide whether the Commonwealth Court had "improperly expanded this Court's holding" in *Dean*. As such, the focus of the parties, both in their briefs and at oral argument, was whether the present case could be distinguished from *Dean* and whether the legal principles referenced in *Dean* regarding the lack of a guardrail did, or did not, apply equally to a situation in which negligently designed guardrails were installed. As set forth herein, we conclude that *Dean* decided a fundamentally different question than the one under consideration here, and that, as such, it has no application to the facts presented in the present case.

*Dean* was decided based upon this Court's determination that the "dangerous condition of Commonwealth agency real estate" refers to either an artificial condition or a defect of the land itself, and that the lack of a guardrail does not fit into either of these categories. Whether that rationale has continued vitality is for another day because here, an installed guardrail is clearly an artificial condition and thus no similar question exists in the present context. For this reason, presumably, Justice Wecht agrees that *Dean* "does not control the outcome of this case." Concurring Op. at 1. Accordingly, no principled reason exists to overrule *Dean* at this time. We are not persuaded by the argument that our decision would incentivize the Commonwealth to forego the installation of needed guardrails merely to avoid potential future liability, as we will not assume that the Commonwealth would act negligently, or even recklessly, for such a purpose.

install a guardrail. When PennDOT installs a guardrail, sovereign immunity is waived if the agency's negligent installation and design creates a dangerous condition.[7]

Finally, PennDOT posits that this Court's per curiam order in *Baer v. Commonwealth, Dep't of Transp.*, 770 A.2d 287 (Pa. 2001), "had the practical effect" of giving notice to the lower courts that *Dean* should be interpreted broadly to preserve sovereign immunity even where PennDOT has erected a faulty guardrail on Commonwealth real estate. *See* PennDOT's Brief at 16-17. Because the General Assembly has failed to amend the Act in light of the numerous lower court decisions barring liability in this context, PennDOT urges us to find that the Commonwealth Court's interpretation was "in accord with the legislative intent" of the real estate exception and should not be disturbed. *See id.* at 18-20 (quoting *Fonner v. Shandon, Inc.,* 724 A.2d 903, 906 (Pa. 1999)). We find PennDOT's argument unpersuasive.

In *Baer*, we affirmed an order of the Commonwealth Court "solely on the basis of our decision in *Dean*." *Baer*, 770 A.2d 287. While we cannot say whether *Baer* had a "practical effect" upon the lower courts, we have unequivocally explained on multiple occasions that "the legal significance of per curiam decisions is limited to setting out the law of the case" and that such decisions are not precedential, even when they cite to binding authority. *See Commonwealth v. Thompson*, 985 A.2d 928, 937 (Pa. 2009) (citing cases). We have described the rationale behind this rule as "simple and compelling" – no stare decisis effect is warranted because per curiam orders "do not set out the facts and procedure of the case nor do they afford the bench and bar the benefit

---

[7] We expressly overrule *Fagan* and its progeny.

of the Court's rationale." *Id.* at 937-38.[8]  Because *Baer* carries no precedential value,[9] its purported "practical effect" upon the lower courts is irrelevant to our decision today, which expressly disavows the application of *Dean* to cases involving the negligent installation or design of guardrails.  For the same reason, we decline to view the General Assembly's subsequent failure to amend the Act as a "seal of approval" regarding *Dean*'s application to defective guardrail cases.  *See* PennDOT's Brief at 17; *see also Commonwealth v. Wanamaker*, 296 A.2d 618, 624 (Pa. 1972) (indicating that inaction by the General Assembly is relevant only as to decisions wherein this Court construed a statute).

Having found that the Cageys' allegations fit squarely within the Sovereign Immunity Act's real estate exception, we conclude that PennDOT is not immune from suit.  Accordingly, we reverse the decision of the Commonwealth Court and remand for further proceedings consistent with this Opinion.

Chief Justice Saylor and Justices Baer, Todd, Dougherty and Mundy join the opinion.

Chief Justice Saylor files a concurring opinion.

Justice Wecht files a concurring opinion.

---

[8] Our case law recognizes one narrow exception to this rule.  If a per curiam order expressly affirms a lower court opinion on the basis of that lower court opinion, we give the order precedential force, but only as to the holding of the case.  *See Commonwealth v. Tilghman*, 673 A.2d 898, 904 (Pa. 1996) (explaining that under no circumstances should a per curiam opinion be interpreted as an endorsement by this Court of the lower court's reasoning as to dicta).  Our order in *Baer* does not fit into this narrow exception as it did not affirm the lower court's decision on the basis of that court's opinion.  As such, *Baer* carries no precedential value.

[9]  To the extent that the per curiam order in *Baer* could be construed to have any precedential value, it is overruled.