**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| CAROLEEN JAKMIAN, | : | No. 266 EAL 2024 |
| | : | |
| Petitioner | : | Petition for Allowance of Appeal |
| | : | from the **Unpublished** |
| | : | **Memorandum Opinion and Order** |
| v. | : | of the Commonwealth Court at No. |
| | : | 665 CD 2023 (**Covey**, Wojcik, |
| | : | Ceisler, JJ.), entered on July 16, |
| CITY OF PHILADELPHIA AND | : | 2024, **affirming** the Lower Court |
| SOUTHEASTERN PENNSYLVANIA | : | Order of the Philadelphia County |
| TRANSPORTATION AUTHORITY, | : | Court of Common Pleas at No. |
| | : | 201001469 (Schulman, J.), entered |
| Respondents | : | on June 12, 2023 |
| | : | |

## CONCURRING STATEMENT

**JUSTICE DOUGHERTY**                                              **FILED: June 11, 2025**

The petitioner in this case suffered injuries on a Philadelphia street after the front tire of her bicycle became stuck in a SEPTA trolley track that has been out of use since 1992. She filed a civil complaint alleging the "trolley track is an artificial condition, affixed to Commonwealth real estate, that inherently . . . constitute[s] a dangerous condition" within the meaning of the real estate exception to the Sovereign Immunity Act. Petition for Allowance of Appeal at 23, *citing* 42 Pa.C.S. §8522(b)(4) (explaining that "sovereign immunity shall not be raised to claims for damages caused by . . . [a] dangerous condition of Commonwealth agency real estate"). However, the trial court granted SEPTA's motion for nonsuit before the case reached the jury. According to the court, "the existence of the real estate itself cannot be the dangerous condition; rather there must be evidence that some derivative condition of the real estate created a dangerous condition." Trial Court

Op., 8/3/23, at 7, *citing Snyder v. Harmon*, 562 A.2d 307 (Pa. 1989). The court further reasoned that "[u]nless a condition is so plainly dangerous that a lay person can come to that conclusion by merely observing the condition, expert testimony is needed to explain why the condition is defective." *Id.* at 9; *see id* at 10 (noting petitioner "failed to show how a trolley rail would be an obvious danger such that expert testimony was not needed to prove that it was, in fact, dangerous"). Respectfully, I question whether these conclusions accurately reflect the law.

First, our decision in *Snyder* does not support the trial court's statement that "the real estate itself cannot be the dangerous condition[.]" *Id.* at 7. In fact, it suggests the exact opposite. In *Snyder*, we explained the "unambiguous language of Section 8522(b)(4) . . . indicate[s] that a dangerous condition must derive, originate from or have as its source the Commonwealth realty." 562 A.2d at 311. We certainly did not hold that real estate — or, more accurately, an artificial condition (like a trolley track) affixed to Commonwealth agency real estate (like a highway) — cannot itself pose a dangerous condition as understood by Section 8522(b)(4).[1] On the contrary, it is settled that "the Commonwealth may not raise the defense of sovereign immunity when a plaintiff alleges, for example, that . . . an object on Commonwealth realty was the result of a defect in the

---

[1] At trial, petitioner elicited testimony that SEPTA is responsible for the trolley tracks in question, as well as the space "between the rails and 18 inches outside of the rails." N.T. Trial, 2/6/23, at 140-41; *see also* N.T. Trial, 2/7/23, at 8, 10-11 (same). Thus, as I see it, the relevant "real estate" includes the portion of the highway over which SEPTA has assumed control. *See id.* at 148 (explaining "SEPTA's right-of-way area shall mean the portions of the right-of-way in which the railway tracks owned and operat[ed] by SEPTA are located including the rails and ties, and the space between the rails, and for 18 inches on each side of the rails"). Surely, the tracks themselves constitute "Commonwealth-owned real property," 42 Pa.C.S. §8522(b)(4), and "[i]t is a well settled tenet of property law that whatever is annexed to the land becomes land." *Cagey v. Commonwealth*, 179 A.3d 458, 464 (Pa. 2018). But this does not change the fact that the statute also deems as real estate "highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5) [(relating to potholes, sinkholes or other similar conditions created by natural elements)]." 42 Pa.C.S. §8522(b)(4).

property or in its construction, maintenance, repair or design." *Jones v. SEPTA*, 772 A.2d 435, 443-44 (Pa. 2001); *see Cagey v. Commonwealth*, 179 A.3d 458, 460 (Pa. 2018) (holding "the general Assembly has waived PennDOT's immunity as a bar to damages caused by dangerous guardrails affixed to Commonwealth real estate"). To satisfy the statutory requirement that a dangerous condition be "of" Commonwealth agency realty under Section 8522(b)(4), "the dangerous condition must be an artificial condition or defect of the land itself, as opposed to the absence of such a condition, and that artificial condition or defect must be the cause, or a concurrent cause, of the injury." *Wise v. Huntingdon Cty. Hous. Dev. Corp.*, 249 A.3d 506, 517 (Pa. 2021). It seems to me that a claim that a trolley track affixed to a highway constitutes an inherently dangerous condition of Commonwealth agency realty meets this standard.

I am also troubled by the trial court's conclusion that petitioner failed to produce sufficient evidence to permit the jury to determine whether "the injury must have resulted from a 'dangerous condition.'" *Cagey*, 179 A.3d at 463, *quoting* 42 Pa.C.S. §8522(b)(4). We have explained "that whether the condition of the Commonwealth realty, in fact, is dangerous as alleged is generally for a jury to decide." *Wise*, 249 A.3d at 520. Yet, here, the trial court deprived the jury of this prerogative because petitioner failed to present: (1) evidence that the inactive tracks pose an "obvious danger" or create a "plainly dangerous" condition; or (2) expert testimony "explain[ing] why the condition is defective." Trial Court Op., 8/3/2023, at 9-10. I am not convinced that either basis warrants an exception to the general rule that "the issue of whether a dangerous condition exists is a question of fact for the jury to resolve." *Dean v. PennDOT*, 751 A.2d 1130, 1135 (Pa. 2000).

To begin, the plain text of the real estate exception to sovereign immunity does not refer to "obvious" or "plainly" dangerous conditions; it more broadly attaches liability to all "dangerous condition[s] of Commonwealth agency real estate[.]" 42 Pa.C.S. §8522(b)(4).

Nor does the statute demand "evidence of a defect or some other damage to the real estate." Trial Court Op., 8/3/23, at 5. As we explained in *Cagey*, "[t]he term 'dangerous condition' is unambiguous and plainly encompasses **any condition** that presents a danger." 179 A.3d at 464 (emphasis added). Thus, neither Section 8522 nor *Cagey* expressly require that the subject real estate be in a state of disrepair or necessarily require a showing of "defect" as the term is used in the context of product liability (where experts are needed often). To reiterate, dangerous conditions can arise due to defects **or** "an artificial condition[.]" *Wise*, 249 A.3d at 517. This case involves the latter. *See id.* at 519 (finding that although certain items of the Commonwealth realty were not "defective insofar as they were not inoperable, damaged, or the like," plaintiff nevertheless properly alleged they posed a dangerous condition "by way of their arrangement").

Here, petitioner testified she was "thrown off [her] bike and smashed into a parked vehicle" after her "bike tire got stuck in the trolley track" while she was trying to move out of the way for a car that was tailgating her. N.T. Trial, 2/6/23, at 90. She attributed the cause of the crash to "the trolley track just being larger than [her] standard city bike tire." *Id.* at 91. In support, she offered pictures of the track. She also elicited testimony that SEPTA is "responsible for all the maintenance, construction, and inspections of" the tracks and the surrounding roadway within eighteen inches on both sides. *Id.* at 132. Having presented evidence that an artificial condition of Commonwealth realty caused her injury, the issue of whether the tracks truly posed a dangerous condition was "a question of fact for the jury to resolve." *Dean*, 751 A.2d at 1135. By precluding jury review on the basis that petitioner failed to produce either an expert or evidence indicating the dangerous condition was "obvious" or "plain," the trial court imposed a new condition that finds no support in the statute or our caselaw.

Despite my misgivings about the trial court's analysis, I concur in the Court's denial of this petition. Petitioner's arguments before this Court largely focus on whether a lack of utility might demonstrate a piece of real estate poses a "dangerous condition." To be sure, there are colorable arguments about the role of utility in evaluating the distinct question of whether a Commonwealth agency committed "a negligent act where the damages would be recoverable under the common law . . . if the injury were caused by a person not having available the defense of sovereign immunity." 42 Pa.C.S. §8522(a); *cf. Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2000) (listing "the social utility of the actor's conduct" as a factor for determining whether a duty of care exists); *Cagey*, 179 A.3d at 468-70 (Saylor, C.J., concurring) (discussing the role of "reasonableness" in the underlying substantive liability determination required in sovereign immunity cases, and how it would "account[] for cost-benefit considerations"). However, I am more troubled by the trial court's conclusions regarding the real estate exception under Section 8522(b)(4), for the reasons outlined above. And since petitioner has not developed pointed advocacy along those lines, I am constrained to agree that allowance of appeal is not warranted here. Nevertheless, I note my future willingness to explore the issues implicated herein if they arise in a more appropriate case.